Davis, J.,
dissenting:
Being constrained to dissent from the judgment rendered by the court, I will briefly state why I cannot concur in it.
I. I hold that the barring clause of the act of March 3, 1863, bars every claim of the several classes cognizable by this court, unless within six years after the' claim first accrues it is put in suit after the manner provided by law.
By the act of March 3,1863, reorganizing the Court of Claims, Congress marked out a new policy for the government. It authorized this court to settle, judicially, disputed claims which might be brought before us through p roper channels, and it fixed a limit of time after which all claims cognizable here and not in suit should be barred.
In a recent case {KendalVs Case) we had occasion to con sider the character of this bar. Speaking through the Chief Justice, we all said:
“ There is a great difference between the terms of this act and those of any other statute of limitations that we have found. We are not aware of any such statute that declares a demand barred, if not sued on within the prescribed time; but the prescription always applies solely to the right of action thereon. *156 The plea of the statute in a suit between individuals is a personal privilege, of which the defendant may or may not avail himself, as he pleases. If he does not interpose it he is deemed to waive it, and no court will set it up for him, no matter how plainly it appears on the face of the declaration or petition that the action is barred. * * * But the parties to a suit in this court have a very different relation to each other from that of individuals in other courts. * * When, therefore, the law declares that ‘ a claim shall be forever barred unless the petition setting forth a statement of the claim be filed in the court within six years after the claim first accrues,’ it is in effect a standing and ever-present plea of limitation, which the court is bound to take cognizance of in every case.”
In deciding the motion in that case, it was not pertinent to inquire why Congress adopted such unusual language in fixing the bar against government claims. My associates take views of the present case which render it necessary for me now to do so.
Before the passáge of the act of March, 1863, executive officers were in the habit of passing upon claims against the government without regard to their date or age, and claimants were accustomed to appeal to Congress from the decisions of the departments. It is not difficult to imagine that such a system might in time become mischievous and perilous.
At the time of the passage of that act the country was engaged in a gigantic war, which increased expenses twenty-fold, and taxed the resources of the Treasury, not only to pay, but even to audit the many claims which the Army and Navy threw upon it. Under these circumstances the legislature determined to convert this court, which before then had been little more than a Congressional commission, into a veritable judicial tribunal. We may assume that it did this with the object of affording a speedy remedy to claimants, as well as, to relieve itself and the Treasury. It incorporated in the act which was to effectuate its new policy the sound principle recognized in all systems of civilized law, and known by the name of “ prescription” in the systems derived from Borne, and when applied to personal property, by the name of “limitation” in the systems derived from the common law of England.
So far as this court is concerned the prescription was most effectual. We held in Kendall’s Case, as already stated, that we cannot permit the agents of the Government to waive it here, even if they should wish to do so. Although we sit with *157 open cloors, and are armed with tbe power to compel t-lie attendance of witnesses and to force tbem to speak under oath., and although our proceedings are condnctedin the presence of scrutinizing attorneys and counsel, representing both sides, and are, asa rule, reviewable in the highest court, the law of 1863 does not intrust us with power to examine into the merits of a claim which is brought here more than sis years after it first accrues.
In my opinion, the same rule of policy applies with greater force to officers of Executive Departments, whose daily business is not watched by the same critical eye, and who have no power compel the attendance of witnesses, and can even in the ‘Treasury apply the test of an oath only to the statements of witnesses who voluntarily appear, but without subjecting them to ■cross-examination by hostile counsel. Only language of the plainest and most unmistakable character can convince me that Congress reposes in executive officers the discretion to pay claims of the classes cognizable by this court after it orders them to be barred here.
When I turn to the act of 1863,1 find not only that no intent to repose such power in an Executive Department appears there, but that, on the contrary, a purpose to take that power away is expressed in perspicuous terms. I find the statutory bar raised against every claim cognizable by the Court of Claims, not solely against such claims as maybe brought here for the court to take cognizance of. It reaches, as we pointed out in Ken-dalls Case, the claims as well as the remedy, whether they are brought here or are presented at the departments. Congress must have used this sweeping language designedly, in order to prohibit accounting officers from allowing and paying claims which we are prohibited from considering.
The argument that executive officers have frequently disregarded this statute has little weight with me. If its language were doubtful, executive construction would be entitled to consideration. Under the circumstances it simply amounts to this, that executive officers have been reluctant to surrender the power which they enjoyed before 1863. Instead of finding in the past disregard of the statute a reason why it should be set aside in the future, it strikes me as better law and sounder imlicy to bring its excellent provisions to the notice of those who are violating them (doubtless unintentionally), in order that they may observe them in future.
*158 Equally unimportant is tbe consideration that the departments or the public creditors may be put to inconvenience by the enforcement of this act. If it bears harshly on any branch of public business or any class of public creditors, Congress will doubtless furnish a speedy remedy. It is better to await legislative relief rather than sacrifice a valuable safeguard to the Treasury by judicial construction.
A claimant who finds himself subjected to a delay in an Executive Department, which threatens to carry his claim unadjusted beyond the time fixed for barring it, has always Ms remedy open in this court. By commencing suit here within the proper time he may always arrest the bar, and thus procure through the machinery of the court the settlement after the lapse of six years which is denied him through departmental machinery. Judge Loring, in his dessenting opinion in the Winnisimmet Company’s Case, presents this view with perspicuity. He says:
“ I think that the statute of 18C8, by its words cited, submits the cases sent here by the head of a department to the same pleadings and evidence, defences and judgments, to which they would have been subject if brought here originally by the claimants or transmitted here by either house of Congress, and that all such cases thus within our jurisdiction are equally within it for all purposes, and are to be administered here in the same way. And I think this construction works injustice to none, but even-handed justice to all. * * ' And 1 do not see that the construction I have contended for subjects a claimant to any hardship at the department. He has ahoays at first his election to carry his claim there or to bring it here, and he can remove it from there and bring it here at any time at his pleasure.” (Winnisimmet Company’s Case, 12 0. 01s. R., 329.)
In the next place, this is the only construction of which the language is capable when tested by the rules of construction established by the Supreme Court.
In deciding that a statute invalidating an assignment of claims against the United States, made before -their allowance and before the issue of a warrant for their payment, rendered all such assignments void, notwithstanding the decisions of this court and the practice of the Treasury to the contrary, the Supreme Court said in a late case:
“We discover nothing in reason, nothing in the mischief the act was plainly intended to remedy, and nothing in the language employed tending to warrant the admission of any excep *159 tions from the comprehensive provisions made; nothing that can justify our holding that, when Congress said all transfers or assignment, partial or entire, absolute or conditional, of claims against the United States, shall be null and'void, they meant they should be in operation only when presented to the accounting officers of the Treasury, but effective when presented everywhere else.” (Gillis’ Case, 95 U. S., 414).
In my judgment, a similar process of vigorous and commonsense reasoning leads to a similar result in the present case. To my mind it as difficult here as it was there to find anythin g in reason, anything in the mischief the act was plainly intended to remedy, anything in the language employed tending to warrant the admission of any exceptions from the comprehensive provisions made; and there is no more in this case than there was in that to justify a court in holding that Congress did not intend that the statutes should be in operation both in this court and in the departments. To complete the parallel, the result, which seems to me to be right, reverses a practice in the Treasury which is said to be uniform, and a decision of this court on a point in which the dissenting judge and the majority concurred. (Winnisimmet Case, dissent, opin., 12 O. Cls. B., 330.)
And, lastly, this construction is in harmony with the views of public policy entertained by the political departments of the Government. In the circular to accounting officers and others, which is quoted by Judge Bichabdson in his dissenting opinion in McKee’s Case, the present distinguished head of the Treasury says:
“ The Treasury Department is admirably organized to pass upon accruing demands upon the Goverment and upon the accounts of disbursing officers. All its machinery and checks are adapted to this duty, and no serious complaint has been, or is likely to be, made of the proper discharge of their duty. But when claims long past due are presented upon ex ¡parte evidence to officers who have no means of calling witnesses, no powers to cross-examine them, no modes of testing the sufficiency of testimony or its credibility, none of the safeguards of an open court of justice, the passage of fraudulent claims is unavoidable. Congress has by law provided a Court of Claims, where within a limited period all demands founded upon contracts may be presented and openly tried and decided. If this remedy in any case should be insufficient, claimants can appeal to Congress, which ma3 grant either a new trial in the courts, or a re-examination in the departments, or directly furnish such relief as it deems right and proper. The Treasury Depart *160 ment is not a court of claims, and tlie reason for withholding tbe ordinary powers of sncb a 'court became apparent to Congress by actual errors that bad occured.” (12 O. Ols. B., 557.)
Thus tbe act of 1863 placed tbe Government in tbe position wbicb. tbe private citizen bad long occupied before tbe law, and reserved to tbe legislature, as tbe political representative of tbe nation tbe right, wbicb tbe individual citizen can always exercise, of waiving tbe bar to tbe statute of limitations.
II. Tbe bar created by tbe act of March 3, 186.3, is, not repealed or affected by tbe act of June 25, 1868.
Tbe act of 1863 provided but two modes by wbicb this court could gain jurisdiction over a claim against tbe Government. A third mode .was created by tbe seventh section of tbe act of June 25, 1868. This authorized tbe bead of a department, in certain specified cases, to transmit claims hither for adjudication.
The act of 1868 did not in terms repeal tbe bar contained in tbe act of 1863, nor did it in terms enlarge tbe powers of this court as to tbe claims of wbicb it might take cognizance.' So far as tbe statute expressed tbe will of tbe legislature in words, it contained nothing to warrant tbe bead of a department in transmitting here a claim wbicb be could not himself lawfully pay, or to authorize this court to render judgment against tbe Government upon such a claim.
Tbe reasons wbicb induced Congress to enact this provision in tbe act of 1868 are stated with tbe usual clearness of tbe writer in tbe opinion of tbe court in tbe Winnisimmet Company’s Case:
"A long-pending dispute bad existed between some of those beads and tbe accounting officers of tbe Treasury as to tlieir respective powers over claims and accounts. The question was submitted successively to Attorneys-General Wirt, Berrien, Taney, Butler, Crittenden, Johnson, Cushing, Bates, and Stanbery, by all of whom it was held that tbe auditing and controlling of accounts were subject to tbe superior supervision of some appropriate bead of a department. * * * In view of these opinions, and to settle tbe dispute by legislation, tbe act of March 30, 1868, was passed, declaring that the act of March 3, 1817, ‘shall not be so construed as to authorize tbe beads of departments to change or modify tbe balances that may be certified to them by the Commissioner of Customs or tbe Comptroller of tbe Treasury; but that such balances, when stated by tbe Auditor and projierly certified by tbe Comptroller, as pro *161 vided by that act, shall be taken as final and conclusive upon the executive branch of the Government, and be subject to revision only by Congress or the proper courts.’ * * * It will be observed that after its passage, though it provided that the decision of the Comptroller might be reviewed by the proper courts, there was no way prescribed for the head of a department, however firm his conviction that a claim ought not to be paid, to bring it under such review. -To meet this difficulty, as we suppose, the same Congress, in the seventh section of the act of June 25, 1868, authorized the heads of departments to transmit certain descriptions of claims here.”
This is undoubtedly the true and., the only motive which induced Congress to enact this provision in the act of 1868. To accomplish this simple purpose it was not necessary to disturb the bar which had been erected in 1883, and, in my judgment, it was not disturbed.
Had there been no previous or other legislation, the head of a department, being authorized to transmit claims here “ whenever”'one should be presented involving disputed facts or controverted law, would have been empowered to transmit any claim of that character, without reference to its age. But under the circumstances this power was to be exercised with reference to the restraints imposed by the previous legislation of 1883; especially as the act of 1868 itself required that he should only transmit claims belonging to one of the several classes of cases of which, by reason of their subject-matter or character, we could take cognizance under existing laws on the voluntary act of the claimant.
Being of the opinion that the head of a department can transmit here for our adjudication only claims which he is authorized to pay when there are no disputed facts or controverted law, and that we are authorized to render judgment against the government on a claim so transmitted only when we might have given judgment against it had the claim been brought here by the voluntary act of the claimant, I regard the claimant’s demand as barred by the statute of limitations, and I think the petition should be dismissed,